# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| JAMES JUGE, ET AL. | |
|---|---|
| | CIVIL ACTION |
| VERSUS | |
| | NO. 15-559-JWD-RLB |
| DAVID YEE, ET AL. | |

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 40) filed by Defendant Garrison Property and Casualty Insurance Company ("Garrison"). Plaintiff James Juge opposes the motion. (Doc. 47). Garrison has filed a reply. (Doc. 48). Oral argument was previously set for August 15, 2017 (Doc. 52) but is no longer necessary. The Court has carefully reviewed the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted.

**I.  Relevant Background**

This suit arises out of a motor vehicle accident between drivers Plaintiff James Juge and Defendant David Yee. James Juge is also suing Garrison, his insurer. The facts relevant to this motion are not disputed. (*See* Defendant's List of Material Facts to Which There is No Gennuine [sic] Dispute, Doc. 40-2 at 1-3, and Plaintiff's Admission of Material Facts, Doc. 47 at 1-3). Rather, the parties contest the proper interpretation of the California Insurance Code. (Docs. 40-3, 47 and 48).

Plaintiffs James Juge, Elizabeth Juge, and J. Juge are residents of Riverside, California. (Docs. 40-2 at 3, 47 at 2.) The plaintiffs were visiting family in Louisiana when a car collision occurred with the defendant driver, David Yee, in the parish of West Baton Rouge, Louisiana.

(Docs. 40-2 at 2-3, 47 at 2.) David Yee is domiciled in Katy, Texas. (Docs. 40-2 at 2, 47 at 2.) David Yee lives with his father, Michael Yee, in Katy. (*Id.*)

On the date of the collision, James Juge was treated at the Lake After Hours Clinic in Louisiana. (Docs. 40-2 at 3, 47 at 3.) The following day, the plaintiffs returned home to California, and James Juge continued the remainder of his medical treatment in California. (*Id.*)

Garrison issued a policy of insurance # 01718 13 01R 7103 7 to the named insured James Juge, which policy was delivered to him at his residence in Riverside, California. (Docs. 40-2 at 1, 47 at 1.) The Garrison policy named to insured James Juge includes "uninsured motorist coverage with per person limits of $100,000.00 and per accident limits of $300,000.00." (*Id.*) Garrison's policy provides that it is a "California Auto Policy." (*Id.*) "The policy language of Garrison's policy states that '[t]he limits of liability (each person and each accident) under UMBI Coverage shall be reduced by all sums: (1) Paid because of the [bodily injury] by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.' " (Docs. 40-2 at 1, 47 at 1-2.)

Regarding David Yee's insurance, Liberty Mutual issued a policy of auto liability insurance to named insured Michael Yee, which was delivered to his address in Katy, Texas, and which lists David Yee as "driver" on the policy. (Docs. 40-2 at 2, 47 at 2.)

The plaintiffs James Juge, Elizabeth Juge, and J. Juge settled their claims with the defendants Liberty Mutual and David Yee, dismissing them with prejudice from this lawsuit. (*Id.*) Plaintiff James Juge's claim against Liberty Mutual and David Yee settled for Liberty Mutual's "per person $50,000.00 policy limit." (*Id.*)

## II. Parties' Arguments

### A. Defendant's Memorandum in Support (Doc. 40-3)

Defendant Garrison filed a Motion for Summary Judgment per Fed. R. Civ. P. 56. (Doc. 40) and a Memorandum in Support of the Motion for Summary Judgment (Doc. 40-3). Based on the language of Cal. Ins. Code § 11580.2, as well as the Garrison policy language regarding UM limits, Garrison argues that it is "entitled to an offset of its $100,000.00 per person UM limits by Liberty Mutual's $50,000.00 liability policy covering defendant David Yee." (Doc. 40-3 at 3.) Garrison cites to § 11580.2 (p) (4)-(5), which states:

> (4) When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury.
>
> (5) The insurer paying a claim under this subsection shall, to the extent of the payment, be entitled to reimbursement or credit in the amount received by the insured from the owner or operator of the underinsured motor vehicle or the insurer of the owner or operator.

*Id.*

Garrison contends that this language from the insurance code as well as the policy language of the Garrison UM policy allows Garrison to "reduce James Juge's $100,000.00 per person UM limits (offset) by the $50,000.00 per person liability limits covering David Yee in this collision." (Doc. 40-3 at 3). Therefore, Garrison argues that James Juge may collect at most $50,000.00. (*Id.*)

Garrison also argues that California law applies in this case. (Doc. 40-3 at 2-6.) Garrison contends first that the Louisiana UM statute does not govern this case because the Louisiana UM statutes only apply to UM policies delivered or issued in Louisiana, to any liability insurance covering any accident that occurs in this state and that involves a resident of this state. (Doc. 40-3

at 4) (citing *Triche v. Martin*, 2008-1220 (La. App. 1 Cir. 5/8/09), 13 So. 3d 649, 652, *writ denied*, 2009-1284 (La. 9/25/09), 18 So. 3d 76). Garrison cites Article 9 of the Louisiana Civil Code, stating that the law is "clear and unambiguous" and accordingly, "no further interpretation may be made in search of the intent of the legislature." (*Id.*) Thus, Garrison concludes that because James Juge's policy was issued and delivered in California, and the collision did not involve a Louisiana resident, California law should apply. (*Id.*)

However, Garrison argues that in the event that Louisiana law applies to the case, Louisiana's choice of law analysis for UM policies directs that California law should apply. (Doc. 40-3 at 4) (citing *Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So. 2d 773, 780). Garrison contends that "Book IV of the Louisiana Civil Code explains that conventional obligations are governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." (Doc. 40-3 at 4-5) (citing La. Civ. Code art. 3537). Further, Garrison relies on art. 3537 which outlines the factors to ascertain which state has stronger and more relevant policies. Article 3537 states:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Garrison thus concludes that California law should govern the dispute because (1) no driver involved in the accident is a resident of Louisiana; (2) the only contact that James Juge has with Louisiana is that the accident occurred there; (3) James Juge is a resident of California, the insurance policy was issued and delivered in California, and the plaintiff received all except the

4

first day of his medical treatment in California; and (4) California has a more substantial interest in the uniform application of its insurance laws. (Doc. 40-3 at 5-6.)

### B. Plaintiff's Opposition (Doc. 47)

The plaintiff opposes the Motion for Summary Judgment filed by Garrison. (Doc. 47). Plaintiff cites to § 11580.2 (p) (4)-(5), arguing that the California statute only applies where the bodily injury is caused by the underinsured motor vehicle. (*Id.* at 4.) Plaintiff then states that David Yee's insurance policy was exhausted and plaintiff James Juge, "was not entirely compensated for his injuries in this accident." (*Id.*) Plaintiff contends that Garrison is "not entitled to any 'offset' for any payments made to the plaintiffs by the defendant, Liberty Mutual, regarding the matter." (*Id.*)

The plaintiff argues that Garrison's policy summarizes § 11580.2 (h) of the California Insurance Code. This subsection of the Code states:

> An insured entitled to recovery under the uninsured motorist endorsement or coverage shall be reimbursed with the conditions stated herein . . . nor shall payment under this section to the insured be delayed or made contingent upon the decisions as to liability or distribution of loss costs under other bodily injury liability insurance . . . Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced: . . . (2) By the amount the insured is entitled to recover from any other person insured under the underlying liability insurance policy of which the uninsured motorist endorsement or coverage is a part, including any amounts tendered to the insured as advance payment on behalf of the other person by the insurer providing the underlying liability insurance.

*Id.* Garrison's policy states under subsection "A": "2. [t]he limits of liability (each person and each accident) under UMBI Coverage shall be reduced by all sums: 1. Paid because of the [bodily injury] by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A." (Doc. 47 at 5.)

James Juge argues that the law clearly states that if the insurance company makes a payment to the insured without determining which party is at fault, the insurer is entitled to an offset if another party is legally responsible for the damages sustained by its insured. (*Id.*) Plaintiff then argues that Garrison has not tendered any payments to the plaintiffs regarding the uninsured/underinsured policy, and thus is not entitled to recover any amounts pursuant to either the Garrison policy, or California law. (*Id.* at 5-6.) Plaintiff contends that defendant Garrison's theory that it is entitled to an offset for the sum paid by Liberty Mutual to the plaintiffs is "not analogous with California law" and that if the court were to apply the offset, the court would reduce James Juge's policy to $50,000.00. (*Id.* at 6-7.)

The plaintiff concludes by citing Garrison's insurance policy, which states that Garrison "will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of [bodily injury] sustained by a covered person and caused by an auto accident." (*Id.* at 6.) The plaintiff states that James Juge was a covered person at the time of the accident, and his injuries arose out of an automobile accident wherein the liability insurance was underinsured for the injuries that James Juge sustained. (*Id.*) Garrison is only entitled to an offset, plaintiff argues, if James Juge caused damages in this accident, or if James Juge received payment from Garrison on David Yee's behalf, and the plaintiff further argues that neither of these two situations occurred. (*Id.* at 7.)

### C. Defendant's Reply (Doc. 48)

Defendant Garrison filed a reply memorandum in support of its Motion for Summary Judgment. (Doc. 48). Garrison argues first that the plaintiff misstates California law, as California law does not distinguish between uninsured and underinsured motorist coverage. (*Id.* at 1) (citing Cal. Ins. Code § 11580.2, "[f]or the purposes of this section, uninsured and underinsured motorist

6

coverage shall be offered as a single coverage.") Garrison then contends that the plaintiff's entire cause of action against Garrison relies on allegations that defendant David Yee was underinsured, and that plaintiff contradicts himself when he states first that an offset only applies where the bodily injury is caused by the underinsured motor vehicle, and then that David Yee's insurance policy did not entirely compensate James Juge for his injuries from this accident. (*Id.* at 2.) Garrison argues that the plaintiff's assertions about David Yee's motor vehicle "is the definition of 'underinsured' and as stated above, California law does not differentiate between uninsured and underinsured motorist coverage." (*Id.*)

Garrison concludes by stating that "it is clear from California case law that a UM insurer is allowed a dollar-for-dollar credit for the underinsured vehicle." (Doc. 48 at 2) (citing *Elliot v. Geico Indem. Co.*, 231 Cal. App. 4th 789, 800, 180, Cal. Rptr. 3d 331, 339 (2014)). Garrison argues that plaintiff misstates California law by believing that Garrison would only receive an offset if Garrison itself tendered money to James Juge. (Doc. 48 at 2.) Garrison concludes by stating that plaintiff is only entitled to "recover the UM benefits set out by the Garrison policy and California law." (*Id.*)

### III.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's

burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991).

IV. **Analysis**

A. **Choice of Law**

Because the plaintiffs are domiciled in California, the defendant is domiciled in Texas, and the collision occurred in Louisiana, there arises an issue of which law should govern the conflict. The Supreme Court of Louisiana has found that "the appropriate starting point in a multistate case . . . is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified in Book IV of the Civil Code, to determine which state's law applies to the interpretation of the UM policy." *Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So. 2d 773, 786.

The California Insurance Code allows for offsetting UM limits. Cal. Ins. Code § 11580.2 (p) (4). Louisiana law does not allow for offsets of UM limits. La. Rev. Stat. § 22:1295. If Louisiana law were to apply, therefore, Garrison would not be entitled to an offset. Although plaintiff has not argued that Louisiana law should govern the dispute, both Louisiana law and a choice of law analysis determine that California law governs the dispute.

Louisiana Civil Code Book IV governs Conflict of Laws. Under Book IV, Title VI governs conventional obligations. In Title VI, Article 3537 states that, as a general rule, "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." The article then details which factors determine the strength and relevance of the states' policies, including: (1) the pertinent contacts of each state to the parties (including the place of negotiation, formation, and performance of the contract and the domiciles of the parties); (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515. La. Civ. Code. art. 3537. "The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand." *Champagne*, 893 So. 2d at 786 (citing to La. Civ. Code arts. 3515 and 3537.)

However, Article 3537 "applies in the absence of an effective choice of law by the parties." La. Civ. Code art. 3537, comment (a). Article 3540 provides the more specific rule governing instances where the parties have selected the applicable law. La. Civ. Code art. 3540, comment (b). Article 3540 states that "[a]ll other issues of conventional obligations[1] are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code art. 3540 & art. 3540, comment (a). "To be recognized under [Article 3540], the contractual choice of law must either be express or implied." La. Civ. Code art. 3540, comment (e). "It is express when it is literally declared in the contract; it is implied when, on the basis of the

---

[1] This article applies generally to issues other than form and capacity. La. Civ. Code art. 3540, comment (a). Form and capacity are governed by La. Civ. Code arts. 3538 and 3539, respectively. Nevertheless, Article 3538 provides that "[a] contract is valid as to form if made in conformity with," among other things, "the law governing the substance of the contract under Articles 3537 or 3540," unless "for reasons of public policy the law governing the substance of the contract under Article 3537 requires a certain form," in which case "there must be compliance with that form." La. Civ. Code art. 3538.

surrounding circumstances, especially the provisions of the contract or the conduct of the parties, it is evident that the parties have clearly relied upon the law of a particular state." *Id.*

Here, the insurance policy in dispute is a "California Auto Policy." (Docs. 40-2 at 1, 47 at 1.) Regarding the conduct of the parties, the policy was issued and delivered in California. (*Id.*) Both parties rely upon California Insurance Code § 11580.2 to make their arguments. (Docs. 40-3 at 2-6, 47 at 4-5.) Neither party argues that Louisiana law should apply, but rather both contend that California law applies in their favor. (*Id.*) Garrison maintains that § 11580.2 supports its argument and thus that Garrison is entitled to an offset. (Doc. 40-3 at 3.) Plaintiff James Juge argues that the statute is applicable favorable to him, and that Garrison is not entitled to an offset. (Doc. 47 at 5-6.) Thus, California law was "expressly chosen" and "clearly relied upon by the parties" for their arguments. La. Civ. Code. art. 3540.

Regarding Article 3537, relying on California law to govern this case does not contravene Louisiana's public policy. Under the factors which determine the strength and relevance of the states' policies, California would be more seriously impaired if its laws were not applied. Neither party to the accident was a resident of Louisiana. (Doc. 40-3 at 6.) James Juge's relevant contacts in Louisiana are minimal: the collision occurred in Louisiana and his first day of medical treatment was in Louisiana. (*Id.* at 6.) Conversely, the relevant contacts with California are much more substantial: (1) the Juge's are residents of California (Doc. 40-2 at 3), (2) the insurance policy in question was issued and delivered in California (*Id.* at 1), (3) the insurance policy denotes itself a "California Auto Policy" (*Id.*), and (4) James Juge received all except his first day of medical treatment in California (*Id.* at 3.)

Looking at the "strength and pertinence of the relevant policies" of the state, Louisiana has less of a substantial interest in the application of insurance remedies than does the insurance-

providing state when the out-of-state parties are transitorily within the borders of Louisiana. *Champagne*, 893 So. 2d at 789. Because the plaintiffs are residents of California who were visiting family in Louisiana, they were indeed transitorily in the state. (Docs. 40-2 at 2-3, 47 at 2.) California's "substantial interest in the uniform application of its laws governing insurance contracts" for its residents is stronger than Louisiana's interest in applying its law to out-of-state residents who are transiently in the state. *Id.*

Additionally, under La. Rev. Stat. § 22:1295 (a) (1) (iii), the Louisiana UM statute only applies to "any liability insurance covering any accident which occurs in this state and involves a resident of this state." The facts of this case are clear: there are no Louisiana residents. (Docs. 40 at 2-3, 47 at 2.) Thus, the Louisiana UM statute does not govern this dispute. See *Triche*, 13 So. 3d 649, 652 (the insurance policy was not issued in Louisiana, the policy was not issued for coverage in Louisiana, and the accident did not occur in Louisiana, thus Louisiana UM statutes did not apply).

Moreover, when resolving a conflict under choice-of-law, "[a]lthough a few cases apply the law of the accident state, the vast majority apply the law of the state in which the insured automobile is principally garaged, usually the state in which the insured is domiciled and/or the policy was delivered." Symeon C. Symeonides, *Choice of Law* 496 (2016). James Juge was issued his insurance policy in California. (Docs. 40-2 at 1, 47 at 1.) James, Elizabeth, and J. Juge are all domiciles of California. (Doc. 40-2 at 3.) Again, California's interest in its policies being carried out is stronger than Louisiana's interest in applying its laws, and further, because the policies were issued in California and the plaintiffs are domiciled in California, the California Insurance Code governs.

### B. Cal. Ins. Code § 11580.2 (p)

## 1. Cal. Ins. Code § 11580.2 (p) Governs

The significant issue in this case is whether § 11580.2 (p) controls, and if so, how courts have interpreted it in similar contexts. Both parties agree that § 11580.2 (p) is pertinent in this case. (Docs. 40-3 at 2, 47 at 4.) However, plaintiff also relies on § 11580.2 (h), arguing that it is nearly identical to Garrison's insurance policy and thus that Garrison is not entitled to an offset. (Doc. 47 at 5.) The language of subsection (p) as applied to these facts would allow the insurer to benefit from an offset, while the language from (h) would not.

Regarding the conflict between § 11580.2 (h) and (p), the Court finds that subsection (p) controls in this case. The language of § 11580.2 (p) is clear and unequivocal, as it provides that it applies only when bodily injury is caused by an underinsured motor vehicle, and "[i]f the provisions of this subdivision conflict with subdivisions (a) through (o), the provisions of this subdivision shall prevail." *Hartford Fire Ins. Co. v. Macri*, 4 Cal.4th 318, 324, 14 Cal. Rptr. 2d 813, 816, 842 P.2d 112, 115 (Cal. 1992). *See also Holcomb v. Hartford Casualty Ins. Co.*, 230 Cal. App. 3d 1000, 1006-07, 281 Cal. Rptr. 651 (1991) ("the Legislature . . . expressly provided that the provisions of subdivision (p), if in conflict with subdivisions (a) through (o) of section 11580.2, shall prevail. Thus we are not required . . . to resolve inconsistencies between the various subdivisions of § 11580.2 . . . because . . . the Legislature has subordinated them to the provisions of subdivision (p).")

Because the language of the statute is so unambiguous, no further interpretation is necessary, and § 11580.2 (p) governs this dispute. *See* Cal. Civ. Code art. 13 ("[w]ords and phrases are construed according to the context and the approved use of the language"); Cal. Code of Civ. P. § 1858 ("[i]n the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been

omitted, or to omit what has been inserted"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012) ("[o]ne should assume the contextually appropriate ordinary meaning [of a statute] unless there is reason to think otherwise").

## 2. Applicability of § 11580.2 (p)

The amount in compensation that James Juge is entitled to is based on the application of § 11580.2 (p) and the jurisprudential interpretation of the California Insurance Code. Regarding the purpose behind Cal. Ins. Code § 11580.2, the court in *Viking Ins. Co. v. State Farm Mut. Auto. Ins. Co.* provided:

> In short, "the fundamental purpose of section 11580.2 is to provide the insured with the same insurance protections he would have enjoyed" had the "tortfeasor carried liability limits equal to [i]nsured's underinsured motorist limits." (*Rudd [v. California Casualty Gen. Ins. Co.*, 219 Cal. App. 3d 948, 268 Cal. Rptr. 624, 55 Cal. Comp. Cases 114 (4th Dist. 1990)]) "Section 11580.2 is not designed to place the insured in a better position than he would have occupied had the other driver carried such insurance." (*Id.* at p. 954; italics in original.)

17 Cal. App. 4th 540, 548, 21 Cal. Rptr. 2d 590 (3d Dist. 1993).

Additionally, § 11580.2 (p) (2)-(3) provides the circumstances under which the subsection applies. The provisions state:

> (2) "Underinsured motor vehicle" means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person.
>
> (3) This coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage.

*Id.*

Looking first to Cal. Ins. Code § 11580.2 (p) (2), the definition of an "underinsured motor vehicle" fits the bill for David Yee. He was an insured driver, but was insured for less than James

13

Juge's UM limit (the limit carried on the motor vehicle of the injured person). (Doc. 48 at 2.) Because California law treats "uninsured" analogous to "underinsured" for these purposes, the section applies to James Juge. Cal. Ins. Code § 11580.2 (n).

Moreover, § 11580.2 (p) (3) applies to these facts because the limits of bodily injury policies applicable to "all insured motor vehicles causing the injury" (Yee's vehicle) have indeed been exhausted by payment of settlement ($50,000.00 Liberty Mutual per person policy limit). Cal. Ins. Code § 11580.2 (p) (3). (Docs. 40-2 at 2, 47 at 2.)

### 3. Interpretations of § 11580.2 (p) (4) and (5)

Garrison seeks summary judgment on the premise that Garrison owes less than the amount James Juge claims for compensation. Based on the language of Cal. Ins. Code § 11580.2 (p) (4)-(5), as well as the Garrison policy language regarding UM limits, Garrison argues that it is "entitled to an offset of its $100,000.00 per person UM limits by Liberty Mutual's $50,000.00 liability policy covering defendant David Yee." (Doc. 40-3 at 1.)

Plaintiff argues that § 11580.2 (p) (4)-(5) only applies where the bodily injury is caused by the underinsured motor vehicle. (Doc. 47 at 4.) Plaintiff states that David Yee's insurance policy was exhausted and that plaintiff, "was not entirely compensated for his injuries in this accident." (*Id.*) The plaintiff contends that Garrison is "not entitled to any 'offset' for any payments made to the plaintiffs by the defendant, Liberty Mutual, regarding this matter." (*Id.*)

Having carefully considered the law, the facts in the records, and the arguments of the parties, the Court finds that Garrison is entitled to benefit from an offset of the $50,000.00 paid by liability insurance company Liberty Mutual to the plaintiffs from its $100,000.00 per person UM limit. Accordingly, partial summary judgment is warranted.

14

The California Insurance Code § 11580.2 (p) (4)-(5) states that when one or more insured, underinsured, or uninsured vehicles causes bodily injury, the maximum liability of the insurer providing the UM coverage "shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." Also, the insurer paying a claim under this subsection is entitled to reimbursement or credit in the amount received by the insured from either the owner or operator of the underinsured motor vehicle, or the owner or operator's insurer. *Id.*

Several courts in California have ruled regarding Cal. Ins. Code § 11580.2 (p) (4) and (5), finding that insurers were allowed to offset their payments to insured parties. *See Malone v. Nationwide Mutual Ins. Co.*, 215 Cal. App. 3d 275, 278, 263 Cal. Rptr. 499, 501 (4th Dist. 1989) (because "the insurer's right to reimbursement . . . is pegged to the insured's receipt of funds from the 'owner or operator of the underinsured motor vehicle or the insurer of such owner or operator'", and Malone had received $100,000.00 in her capacity as the heir to her husband's estate and another $100,000.00 for her own injuries from the alleged tortfeasor, Nationwide was entitled to be reimbursed for any sums Malone received from the party responsible for her damages, both as heir to her husband's estate and in her own right.)

Similarly, in *Holcomb*, the court found that because an insured who was injured while riding as a passenger in a motor vehicle had recovered $50,000.00 from the driver's insurer, under which policy the UM limit was $60,000.00, the insurer of the injured passenger was entitled to offset the $50,000.00 from the limit. 230 Cal. App. 3d at 1007. The court relied on § 11580.2 (p) (4), stating "an insured who is injured by both an underinsured and an uninsured motor vehicle, by virtue of section 11580.2, subdivision (p)(4), can recover no more than the limits of his

underinsured motorist coverage reduced by the amount paid on behalf of the underinsured motorist." *Id.* at 1006.

The reimbursement between the injured insured party and the insurer is "the foundation of section 11580.2 (p)." *Hartford Fire Ins. Co. v. Macri*, 4 Cal. 4th 318, 328. 842 P.2d 112, 117, 14 Cal. Reptr. 2d 813, 818 (1992). "[T]he underinsured motorist carrier gets a dollar-for-dollar credit for all payments by third party tortfeasors to the insureds, whether the insureds are made whole or not. In other words, a carrier providing underinsured motorist benefits *never* pays the full amount, only the difference between the policy limits and all contributions by all tortfeasors to all insureds." *Id.* (citing *Malone* 215 Cal. App. 3d at 277; italics in original.) *See Mercury Ins. Co. v. Vanwanseele-Walker*, 41 Cal. App. 4th 1093, 49 Cal. Rptr. 2d 28 (4th Dist. 1996) ("[t]he [§ 11580.2 (p) (4)] statutory language is clear: an insured's recovery under an insurance policy must be offset by amounts received from other 'persons or organizations legally liable for the injury'") (internal citations omitted). In *Vanwanseele-Walker*, the court stated that if the tortfeasor's insurance coverage limits are lower than the victim's underinsurance limits, the victim may be entitled to recover at most the difference between the two. 41 Cal. App. 4th at 1102. The court ultimately held that the victim was unable to recover from the insurer, as the underinsurance limit ($100,000.00) was less than the amount paid by the tortfeasor ($466,666.67). *Id. See also Elliot*, 231 Cal. App. 4th at 802 (insurer was entitled to an offset under § 11580.2 (p) (4), as it "plainly allows an offset for all contributions made by all tortfeasors to all insureds," insured had indeed recovered an amount in a settlement on behalf of the tortfeasor, and the statute includes payments received from the tortfeasor's insurance as well as the tortfeasor itself); *Rudd*, 219 Cal. App. 3d 948 (concluding that the insurer had a right to offset against amounts owed under the underinsurance policy provisions the amount of worker's compensation that insured received, but

not on proceeds on which the employer retained a lien because the insured did not "receive" them). Similarly, in *Quintano v. Mercury Casualty Co.*, 11 Cal. 4th 1049, 1056, 906 P.2d 1057, 1061, 48 Cal. Rptr. 2d 1, 5 (1995), the Court stated as follows:

> The insurer offering an underinsured motorist policy is only liable to the insured for the difference between the insured's underinsured motorist policy limits and the amount paid to the insured by the tortfeasor or his or her insurer. ([*Macri*,] at p. 328, 14 Cal.Rptr.2d 813, 842 P.2d 112; § 11580.2(p)(4).) The insurer offering underinsured motorist coverage is entitled to reimbursement or credit for the amount the insured receives from the tortfeasor or his or her insurer. (*Macri*, supra, 4 Cal.4th at p. 328, 14 Cal.Rptr.2d 813, 842 P.2d 112; § 11580.2(p)(5).) The insurer's right to reimbursement or credit "is specifically limited to the underinsured tortfeasor's policy limits and precludes the insurer from asserting additional subrogation rights." (*Macri*, supra, 4 Cal.4th at p. 328, 14 Cal.Rptr.2d 813, 842 P.2d 112, italics omitted.)

*Id.*

California courts have consistently held that the California Insurance Code allows for an offset of payment under an underinsured/uninsured policy limit. When the injured party's UM limit is greater than the limit of the tortfeasor, the insurer of the injured is permitted to offset the amount it owes based on whatever payments the insured has already received from the tortfeasor or its insurer. California precedent thereby recognized that Garrison is entitled to offset its payment to James Juge.

Here, James Juge holds a UM insurance policy with Garrison with limits of $100,000.00 per person. (Docs. 40-2 at 1, 47 at 1.) David Yee holds a policy with Liberty Mutual with the limit of $50,000.00 per person. (Docs. 40-2 at 2, 47 at 2.) The plaintiffs settled with Yee and Liberty Mutual for his policy limit. (Docs. 40-2 at 2, 47 at 2.) Thus, the remainder between the amount that James Juge has received and his own UM limit is $50,000.00. Because California law, and thus Cal. Ins. Code § 11580.2 (p) (4)-(5) govern in this case, Garrison is entitled to a credit of the

$50,000.00 paid to James Juge, for its $100,000.00 per person UM limits. The most that James Juge may collect from Garrison in this case, therefore, is $50,000.00.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 40) filed by Defendant Garrison Property and Casualty Insurance Company is **GRANTED**. Plaintiff James Juge's recovery against Garrison is limited to, at most, $50,000.00.

**IT IS FURTHER ORDERED** that the oral argument previously set for August 15, 2017 (Doc. 52) is hereby CANCELLED.

Signed in Baton Rouge, Louisiana, on June 6, 2017.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**